FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

MAR 30 2007

CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

Priority
Send
Enter

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE I, et al.,<br><br>　　　　Plaintiff(s),<br><br>　　v.<br><br>WAL-MART STORES, INC.,<br><br>　　　　Defendant. | CASE NO. CV 05-7307 AG (MANx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |

This action involves the alleged failure of Defendant Wal-Mart Stores, Inc. to adequately monitor its suppliers' factories in foreign countries to ensure that the suppliers are treating their employees fairly. Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint is GRANTED with leave to amend.

**BACKGROUND**　THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d).

ENTERED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

APR - 2 2007

CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

The facts in this background section are taken from the allegations of the First Amended Complaint ("Complaint"), which the Court must accept as true in this motion. Defendant is the largest retailer in the world, selling discounted merchandise at stores in the United States and internationally, including more than

140 stores in California. (Complaint 13:8-12.) In 1992, Defendant developed a code of conduct for its suppliers known as the "Standards for Suppliers" ("the Standards") and incorporated the Standards into its supply contracts with foreign suppliers. (Complaint 14:2-7.) The Standards require foreign suppliers to adhere to all local laws and industry standards. (Complaint Exhibit A.) In addition, the Standards require suppliers to comply with various labor and employment conditions, including requirements regarding compensation, hours of labor, forced labor, child labor, discrimination, and freedom of association. (Complaint Exhibit A.) To ensure suppliers' compliance with the Standards, Defendant reserves the right to make periodic, unannounced inspections of suppliers' factories. (Complaint Exhibit A.) Each supplier acknowledges that failure to comply with the Standards can result in cancellation of orders and refusal by Defendant to do business with the supplier. (Complaint 17:2-5.) Suppliers also agree to post a local-language copy of the Standards in their factories for their employees to read. (Complaint 17:5-6.)

In public announcements, Defendant claims that its purpose in requiring compliance with the Standards is to encourage suppliers to make changes that improve the lives of workers in foreign factories. (Complaint 19:26-20:1.) Defendant claims that it conducts business with suppliers who are complying with the Standards. (Complaint 14:13-14.) Defendant also advertises that the Standards help to improve working conditions around the world and that it does not condone violations of the Standards. (Complaint 20:6-12.)

But Plaintiffs claim that Defendant's efforts to ensure that suppliers comply with the Standards are inadequate. To monitor compliance with the Standards, Defendant conducts a factory inspection program with a color-coded assessment scheme. (Complaint 15:19-20.) Factories with critical violations are failed, those with high-risk violations are given a red rating, those with medium-risk violations are given a yellow rating, and those with low-risk violations are given a green

rating. (Complaint 15:20-22.) Defendant continues to purchase products from factories with red ratings, only suspending orders after two consecutive red ratings. (Complaint 15:23-27.) Defendant can restore purchasing from these factories if they receive a yellow rating. (Complaint 15:27-28.)

In 2004, only 8% of Defendant's audits were unannounced, and workers were often coached on the answers to give inspectors. (Complaint 16:1-4.) A former inspector for Defendant has claimed that the inspectors are pressured to produce positive reports for factories to avoid disruption of Defendant's business. (Complaint 16:12-16.) Defendant knows that its auditing process can often be the main enforcement mechanism because labor laws are not routinely enforced in many of the foreign countries its suppliers have factories. (Complaint 19:18-23.) Additionally, Plaintiffs believe Defendant imposes difficult price and time requirements on suppliers that force suppliers to violate the Standards. (Complaint 16:19-20.)

The non-California Plaintiffs are workers in Defendant's suppliers' garment factories in China, Bangladesh, Indonesia, Swaziland, and Nicaragua. (Complaint 1:10-13.) The non-California Plaintiffs have suffered from various poor working conditions, including excessive hours or days of work, withheld pay, confiscation of withheld pay, overtime without pay, less than minimum-wage pay, denial of overtime pay, less than required rest periods, lack of safety equipment, denial of maternity benefits, discrimination because of union activities, and physical abuse. (Complaint 20:21-30:20.)

The California Plaintiffs are employees of Defendant's competitors in Southern California. (Complaint 30:22-25.) Their employers were placed at an unfair competitive disadvantage because of Defendant's actions. (Complaint 30:25-28.) The California Plaintiffs lost pay and benefits because their employers were forced to reduce employee benefits to compete with Defendant. (Complaint 30:22-31:6.)

After Defendant filed its Motion to Dismiss Plaintiffs' First Amended Complaint ("Motion") seeking to dismiss all claims for relief, an Opposition and Reply were filed. The Court has also accepted briefing from amici curiae supporting Defendant's Motion, and Plaintiffs have filed briefing opposing the amici curiae. Plaintiffs refer to their claims as "Causes of Action," but here in federal court and this Order, the proper phrase "Claims for Relief" is used.

## DISCUSSION

### 1.  LEGAL STANDARD.

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. The Court must construe the complaint liberally, and dismissal should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-102 (1957); see Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that a complaint should be dismissed only when it lacks a "cognizable legal theory" or sufficient facts to support such a theory). The Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff. Westland Water Dist. v. Firebaugh Canal, 10 F.3d 667, 670 (9th Cir. 1993); Balistreri, 901 F.2d at 699. Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies of the complaint could not possibly be cured by amendment. Jackson v. Carey, 353 F.3d 750, 758 (9th Cir. 2003) (citing Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996)); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000); Polich v. Burlington Northern, Inc.,

4

942 F.2d 1467, 1472 (9th Cir. 1991).

## 2. THE FIRST, SECOND, AND THIRD CLAIMS FOR RELIEF FAIL TO ALLEGE BREACH OF CONTRACT.

In their first, second, and third claims for relief, the non-California Plaintiffs allege that Defendant breached its supplier contracts by failing to adequately monitor supplier factories. Plaintiffs claim that they were intended third-party beneficiaries of Defendant's promise to enforce the suppliers' compliance with the Standards. But Plaintiffs' factual allegations do not support this legal conclusion.

There is some disagreement between the parties about whether Arkansas or California law applies to the contract claims. But Plaintiffs and Defendant agree that both jurisdictions follow the Restatement of Contracts regarding third-party beneficiaries and that the choice of law would not affect the analysis.

"A promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty." Restatement (Second) of Contracts § 304 (1981). Thus, the third-party beneficiary can enforce such a contract against the party that made the promise (the promisor) and cannot enforce the contract against the party that bargained for the promise (the promisee). "The only category of cases mentioned in the Restatement where the beneficiary may maintain an action against the promisee is where the beneficiary had a previous enforceable claim against the promisee and the promisor essentially assumed the promisee's obligation." District of Columbia v. Campbell, 580 A.2d 1295, 1302 (D.C. 1990).

Based on the allegations in the complaint and the copy of the Standards attached as Exhibit A to the complaint, Plaintiffs have asserted facts showing Defendant's intent to benefit foreign factory workers (Plaintiffs) through the incorporation of the Standards into the supply contracts. But under these facts, it

is the suppliers who have made the promise to comply with the Standards. Therefore, Plaintiffs' breach of contract claims would lie against the suppliers (the promisors) and not Defendant (the promisee).

Plaintiffs apparently recognize this problem with their breach of contract theory but argue that it is a long-discarded principle, citing <u>Johnson v. Holmes Tuttle Lincoln-Mercury, Inc.</u>, 160 Cal. App. 2d 290, 297 (1958) ("It is no objection to the maintenance of an action by a third party that a suit might be brought also against the one to whom the promise was made."). But the language quoted from <u>Johnson</u> does nothing to support Plaintiffs' contention. The court merely recognized that the ability of a third-party beneficiary to sue the promisee on a previous claim does not prevent the third-party from alternatively suing the promisor.

Plaintiffs do not rely solely on this argument. Instead, Plaintiffs' main contention is that Defendant made separate promises in these same supplier contracts to monitor and enforce the suppliers' compliance with the Standards. But the Complaint's factual allegations do not support this argument. Plaintiffs have not pointed the Court to any alleged contract terms that would show Defendant made such promises. Instead, Plaintiffs point to contractual language giving Defendant the right to inspect factories and language stating Defendant's intention to inspect factories and monitor compliance. None of these statements are sufficient to show Defendant's contractual promise or contractual obligation to undertake inspections and monitoring programs.

The existence of such a contractual promise flowing from Defendant to the suppliers is improbable given the nature of the contracts. As previously explained, Plaintiffs claim that Defendant, to boost its image with consumers, extracted a promise from suppliers to comply with the Standards. But it more than strains logic to think that the suppliers would have been motivated to bargain for a counter-promise from Defendant to enforce the suppliers' contractual promise to

1 | comply. It is sufficiently difficult just to articulate such a concept. Plaintiffs do
2 | not even make such reality-bending allegations regarding the suppliers' motivation
3 | or intent, focusing instead on Defendant's intent.

4 | As Defendant points out, Plaintiffs focus on the wrong party's intent. Under the Restatement, a beneficiary is an intended beneficiary if "the circumstances indicate that the <u>promisee intends</u> to give the beneficiary the benefit of the promised performance." Restatement (Second) of Contracts § 302 (1981) (emphasis added). Thus, under Plaintiffs' theory that Defendant was a *promisor*, the intent of the suppliers (the *promisees*) to extract a promise for the benefit of Plaintiffs would be the more relevant consideration for analyzing intended third-party beneficiaries. Essentially, it is Plaintiffs' failure to allege a contractual promise enforceable by the suppliers against Defendant that prevents Plaintiffs from alleging a proper breach of contract claim as a third-party beneficiary. <u>See</u> <u>Marina Tenants Ass'n v. Deauville Marina Dev. Co.</u>, 181 Cal. App. 3d 122, 132 (1986) ("A third-party beneficiary cannot assert greater rights than those of the promisee under the contract.").

The cases relied upon by Plaintiffs are factually distinguishable because the defendants in those cases made bargained-for contractual promises to monitor third-party entities. <u>See, e.g.</u>, <u>Chen v. Street Beat Sportswear, Inc.</u>, 226 F. Supp. 2d 355, 358 (E.D.N.Y. 2002) (analyzing the defendant's contractual promise with the United States Department of Labor to monitor another entity's labor practices).

Defendant's Motion to Dismiss the first, second, and third claims for relief is GRANTED with leave to amend.

### 3. THE FOURTH, FIFTH, AND SIXTH, CLAIMS FOR RELIEF FAIL TO ALLEGE NEGLIGENCE.

The non-California Plaintiffs assert several claims for relief under negligence theories. Specifically, Plaintiffs allege negligence, negligence per se, and negligent hiring and supervision. The essence of these negligence allegations is not that Defendant, through vicarious liability, is responsible for its suppliers' negligence. On the contrary, Plaintiffs claim that the suppliers intentionally mistreated their employees. The negligence claim presented is essentially a claim that Defendant was negligent in the way it conducted business with its suppliers. Plaintiffs believe Defendant was negligent in the way it made supply contracts and carried through with the performance of those contracts. And as a result of this alleged negligence, Plaintiffs claim they were injured by the intentional conduct of their employers.

Although Plaintiffs argue various theories of negligence in their briefing, including negligent retention of control and negligent undertaking, none of these theories can extend liability to Defendant for the actions of the suppliers against Plaintiffs in this case. Plaintiffs present no authority for finding that Defendant had a duty toward Plaintiffs under these circumstances. The duty Plaintiffs seek to enforce would be a duty of a retailer to be reasonably careful when contracting with suppliers to prevent intentional labor violations by those suppliers.

Plaintiffs' legal authority for its claims of negligence does not support the imposition of such a duty on Defendant. Plaintiff cites California cases dealing with defendants who hired independent contractors but maintained control over the contractors' work environment. Even assuming Defendant's suppliers could be considered Defendant's independent contractors, these cases are only superficially relevant. These cases involved defendants who negligently exercised control over safety conditions at job sites and affirmatively created work

environments with the risk of accident and physical injury. See, e.g., Hooker v. Dep't of Transp., 27 Cal. 4th 198, 202 (2002) (analyzing the liability of a defendant whose safety supervisors had allowed a crane operator to unsafely retract the outriggers of his crane numerous times to allow cars to pass); Brown v. Turner Constr. Co., 127 Cal. App. 4th 1334, 1338-39 (2005) (analyzing the liability of a defendant who had supplied safety systems and devices for a job site but had removed those devices before the job was completed). Plaintiffs do not cite any cases where the negligence of the defendant involved the failure to control the intentional actions of another company in managing its workforce.

Plaintiffs' expansive view of the scope of negligence liability, if embraced by the law, would have broad implications. Plaintiffs argue generally for Defendant, and therefore all businesses, to be responsible for the employment conditions for their own workers and all the workers employed by their suppliers. Plaintiffs may believe that Defendant is different because of the size of its business or because Defendant contractually required certain employment conditions from its suppliers. But the law of negligence does not make such distinctions. Plaintiffs' negligence claims go well beyond the recognized limits of liability and cannot be accepted.

Defendant's Motion to Dismiss the fourth, fifth, and sixth claims for relief is GRANTED with leave to amend.

### 4. THE SEVENTH AND TENTH CLAIMS FOR RELIEF FAIL TO ALLEGE UNJUST ENRICHMENT.

In their seventh and tenth claims for relief, the California Plaintiffs and the non-California Plaintiffs allege that Defendant was unjustly enriched through the sub-standard working conditions at Defendant's suppliers. One of the basic requirements for a claim of restitution based on unjust enrichment is that the

defendant received a benefit at the expense of the plaintiff. See McBride v. Boughton, 123 Cal. App. 4th 379, 389 (2004). Plaintiffs present cases that suggest a claim for restitution based on unjust enrichment can be alleged even where the plaintiff did not make a monetary payment to the defendant. See California Fed. Bank v. Matreyek, 8 Cal. App. 4th 125, 132-34 (1992) (finding that a bank conferred a benefit on a customer by sparing the customer the expense of a prepayment penalty, but ultimately denying the bank's claim for restitution). But Plaintiffs do not present any authority for applying an unjust enrichment theory to the facts alleged in this case. The supposed connection between Defendant's alleged benefit and the expense suffered by Plaintiffs is very attenuated. The non-California Plaintiffs allege that Defendant benefitted through a business relationship with their employers, who did not compensate them adequately. The California Plaintiffs allege that Defendant benefitted through a competitive relationship with their employers, who were forced to reduce their compensation. Plaintiffs do not present any authority to allow a claim for restitution based on unjust enrichment where the financial connection between the parties is so remote.

Defendant's Motion to Dismiss the seventh and tenth claims for relief is GRANTED with leave to amend.

### 5. THE EIGHTH AND NINTH CLAIMS FOR RELIEF FAIL TO ALLEGE A VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW.

Plaintiffs' eighth and ninth claims for relief allege that Defendant violated California Business and Professions Code Section 17200 et seq. ("Section 17200"). The essence of Plaintiffs' claims is that Defendant deceived consumers with its advertising. Defendant advertised that it was only using responsible suppliers that met the Standards, while in reality, Defendant was not adequately

1 enforcing the Standards and allowed its suppliers to commit labor violations.
2 Therefore, Plaintiffs' eighth and ninth claims for relief are claims of consumer
3 deception or false advertising under Section 17200. To the extent the non-
4 California Plaintiffs are alleging violations of Section 17200 based on conduct that
5 occurred in factories in foreign countries, such conduct is not within the reach of
6 the statute. See Norwest Mortgage, Inc. v. Superior Court, 72 Cal. App. 4th 214,
7 222 (1999) (finding that Section 17200 did not apply to non-California Plaintiffs
8 for conduct occurring outside California).

9       Following voter approval of Proposition 64 in 2004, a private plaintiff
10 under Section 17200 must be someone "who has suffered injury in fact and has
11 lost money or property as a result of such unfair competition." Cal. Bus. & Prof.
12 Code § 17204. Plaintiffs fail to meet this requirement. Plaintiffs do not allege
13 facts showing that they lost money "as a result of" Defendant's false or deceptive
14 advertising. Plaintiffs do not even claim to be consumers of Defendant's products.
15 Instead, Plaintiffs claim to have lost money as a result of the independent actions
16 of their employers, who were influenced by Defendant's actions. This is not the
17 type of injury that occurs "as a result of" false or deceptive advertising.

18       Although the California Supreme Court has yet to address the issue, district
19 courts in California have considered the meaning of "as a result of" in the context
20 of consumer deception following Proposition 64. The district courts have not
21 agreed on whether a consumer must show reliance on the false or misleading
22 statement to be a proper plaintiff. Compare Laster v. T-Mobile USA, Inc., 407 F.
23 Supp. 2d 1181, 1194 (S.D. Cal. 2005) (requiring reliance), with Anunziato v.
24 eMachines, Inc., 402 F. Supp. 2d 1133, 1138-39 (C.D. Cal. 2005) (not requiring
25 reliance). Despite the differing opinion regarding reliance, neither case supports
26 finding an injury in fact in a consumer deception case when the plaintiff is not a
27 consumer. Plaintiffs have not shown any legal authority for such an extension of a
28 consumer protection law.

Defendant's Motion to Dismiss the eighth and ninth claims for relief is GRANTED with leave to amend.

### 6. THE ELEVENTH CLAIM FOR RELIEF FAILS TO ALLEGE A VIOLATION OF THE ALIEN TORT STATUTE.

In the eleventh claim for relief, two of the non-California Plaintiffs allege violations of 28 U.S.C. section 1350, the Alien Tort Statute ("ATS"). Plaintiffs base their claim on allegations that Defendant aided and abetted the suppliers in withholding Plaintiffs' pay and thereby forcing Plaintiffs to work without compensation.

The Supreme Court has found that the ATS provides a cause of action for a modest number of international law violations. Sosa v. Alvarez-Machain, 542 U.S. 692, 724 (2004). Federal courts should not recognize claims "for violations of any international law norm with less definite content and acceptance among civilized nations than the historical paradigms familiar when § 1350 was enacted." Id. at 732. In explaining this standard, the Supreme Court cited with approval the reasoning of federal courts and judges who had found that the ATS only reached a handful of heinous actions that violate definable and universal norms of conduct. Id. (citing Tel-Oren v. Libyan Arab Republic, 726 F.2d 774, 781 (D.C. Cir. 1984) (Edwards, J., concurring)). Whether a particular action would support a claim under the ATS also involves "judgment about the practical consequences of making that cause available to litigants in the federal courts." Id. at 732-33.

Plaintiffs present no authority to support their contention that arbitrarily withholding an employee's pay is equivalent to the limited and heinous conduct found actionable under the ATS. Plaintiffs' reliance on cases involving "forced labor" is misplaced. These cases involved involuntary labor and physical coercion. See, e.g., Iwanowa v. Ford Motor Co., 67 F. Supp. 2d 424, 433-34

(D.N.J. 1999) (involving a plaintiff who was abducted by Nazis troops in Russia and sent to work in a plant in Germany under the threat of violence).  Here Plaintiffs only allege that some of their pay was withheld and that they were "forced" to endure such treatment because of their economic circumstances.  Although the Court is sympathetic to the plight of Plaintiffs, the ATS is not the appropriate avenue for relief.  As the Supreme Court has instructed in Sosa, the federal courts should be mindful of practical consequences before opening the federal courts to new claims under the ATS.  Plaintiffs' theory of liability would have broad implications if accepted.  Such a rule would support a federal claim for relief whenever any employee was denied pay or otherwise subject to economic coercion while living under difficult economic circumstances.

Defendant's Motion to Dismiss the eleventh claim for relief is GRANTED with leave to amend.

## DISPOSITION

For all the reasons stated, Defendant's Motion to Dismiss is GRANTED with leave to amend.  If Plaintiffs desire to do so, they shall file an amended complaint within 21 days of this order setting forth adequate allegations against Defendant.  The amended complaint shall be complete in and of itself, and shall not incorporate by reference any prior pleading.

IT IS SO ORDERED.

DATED: March 30, 2007

Andrew J. Guilford
United States District Judge